## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**SAMUEL & STEIN**
David Stein (DS 2119)
38 West 32nd Street
Suite 1110
New York, New York 10001
(212) 563-9884
dstein@samuelandstein.com

Attorneys for Plaintiffs, Individually
and on behalf of all others similarly
situated

| | |
|---|---|
| Antonio Taveras, Pascual Rosa, and Victor Catedral, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>- vs. –<br><br>D&J Real Estate Management II LLC, 3171 Rochambeau Ave. LLC, Bronx Boynton Ave. LLC, XYZ Corporations #1-10, and David Sedgh,<br><br>Defendants. | DOCKET NO. 17-CV-7567<br><br>**COMPLAINT** |

Plaintiffs Antonio Taveras, Pascual Rosa, and Victor Catedral, by and through their undersigned attorneys, for their complaint against defendants D&J Real Estate Management II LLC, 3171 Rochambeau Ave. LLC, Bronx Boynton Ave. LLC, XYZ Corporations #1-10, and David Sedgh, allege as follows, on behalf of themselves and on behalf of all other persons similarly situated:

## NATURE OF THE ACTION

1.    Plaintiffs allege on behalf of themselves and on behalf of other similarly situated current and former employees of defendants D&J Real Estate Management II LLC, 3171 Rochambeau Ave. LLC, Bronx Boynton Ave. LLC, XYZ Corporations #1-10, and David Sedgh, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to: (i) unpaid wages from defendants for overtime work for which they did not receive overtime premium pay as required by law; and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because defendants' violations lacked a good faith basis.

2.    Plaintiff Victor Catedral alleges on behalf of himself and on behalf of other similarly situated current and former employees of defendants D&J Real Estate Management II LLC, 3171 Rochambeau Ave. LLC, Bronx Boynton Ave. LLC, XYZ Corporations #1-10, and David Sedgh, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to: (i) compensation for wages paid at less than the statutory minimum wage; and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because defendants' violations lacked a good faith basis.

3.    Plaintiffs    further    complain    that    they    are entitled to compensation under the New York Labor Law for defendants' violation of the Wage Theft Prevention Act.

4.    Plaintiff Victor Catedral further alleges that he is entitled to compensation for (i) wages paid at less than the statutory minimum wage under the New York Labor Law, (ii) overtime compensation for hours worked in excess of forty hours per week, and (iii) liquidated damages pursuant to New York Labor Law for these violations.

5.    Plaintiffs    Antonio    Taveras    and    Pascual    Rosa further alleges that they are entitled to (i) compensation for defendants' failure to pay them all compensation earned in violation of the New York Labor Law; and (ii) liquidated damages    pursuant    to    New    York    Labor    Law    for    these violations.

## THE PARTIES

6.    Plaintiffs are each adult individuals residing in the Bronx, New York.

7.    Plaintiffs consent in writing to be parties to this action pursuant to 29 U.S.C. § 216(b); their written consents are attached hereto and incorporated by reference.

8.    Upon information and belief, defendant D&J Real Estate Management II LLC is a New York company with a

3

principal place of business at 40-13 104th Street, Corona, New York.

9.   Upon information and belief, defendant 3171 Rochambeau Ave. LLC is a New York company with a principal business address of 40-13 104th Street, Corona, New York.

10.   Upon information and belief, defendant Bronx Boynton Ave LLC is a New York company with a principal business address of 40-13 104th Street, Corona, New York.

11.   Upon information and belief, XYZ Corporations #1-10 represent other companies affiliated with D&J Real Estate Management II LLC, that share common ownership and management and operate for the common business purpose of owning and managing apartment buildings.

12.   At all relevant times, defendants D&J Real Estate Management II LLC, 3171 Rochambeau Ave. LLC, Bronx Boynton Ave. LLC, and XYZ Corporations #1-10 (collectively, the "D&J defendants") have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

13.   Upon information and belief, at all relevant times, the D&J defendants have had gross revenues in excess of $500,000.00.

14. Upon information and belief, at all relevant times herein, the D&J defendants have used goods and materials produced in interstate commerce, and have employed at least two individuals who handled such goods and materials.

15. At all relevant times, the D&J defendants shared common ownership and management, common offices and personnel, and operated for a common business purpose.

16. Upon information and belief, at all relevant times, the D&J defendants have constituted a single "enterprise" as defined in the FLSA.

17. Upon information and belief, defendant David Sedgh is the owner or a part owner and principal of the D&J defendants, who has the power to hire and fire employees, set wages and schedules, and maintain their records.

18. Defendant David Sedgh was involved in the day-to-day operations of the D&J defendants and played an active role in managing the business.

19. For instance, David Sedgh hired and fired the plaintiffs, set their pay and schedules, maintained their employment records, paid them each week, and supervised their work.

20.  Defendants constituted "employers" of plaintiffs as that term is used in the Fair Labor Standards Act and New York Labor Law.

## JURISDICTION AND VENUE

21.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

22.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because defendants do business in this district and the events which give rise to this action took place in this district.

## COLLECTIVE ACTION ALLEGATIONS

23.  Pursuant to 29 U.S.C. § 206 and § 207, plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of a group of individuals defined as follows:

> All persons who are or were formerly employed by defendants in the United States at any time since September 28, 2014, to the entry of judgment in this case (the "Collective Action Period"), who were building superintendents and/or porters, and who were not paid statutory minimum wages and/or overtime compensation at rates at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

24.   The Collective Action Members are similarly situated to plaintiffs in that they were employed by defendants as building superintendents and/or porters, and were denied payment at the statutory minimum wage and/or were denied premium overtime pay for hours worked beyond forty hours in a week.

25.   They are further similarly situated in that defendants had a policy and practice of knowingly and willfully refusing to pay them the minimum wage or overtime.

26.   Plaintiffs and the Collective Action Members perform or performed similar primary duties, and were subjected to the same policies and practices by defendants.

27.   The exact number of such individuals is presently unknown, but is known by defendants and can be ascertained through appropriate discovery.

## FACTS

28.   At all relevant times herein, the D&J defendants owned and managed residential properties in New York, including buildings in the Bronx located at 950 Woodycrest Ave., 957 Woodycrest Ave., and 1135 Boynton Ave.

29.   Mr. Taveras was employed by the D&J defendants from approximately June 2012 through June 2017.

30.  Mr. Rosa was employed by the D&J defendants from approximately August 2012 through July 2017.

31.  Mr. Catedral was employed by the D&J defendants from approximately June 2012 through September 2017.

32.  Mr. Taveras and Mr. Rosa were each employed as building superintendents, while Mr. Catedral was employed as a building porter.

33.  Plaintiffs were assigned to different buildings owned and managed by defendants, as follows:

   a.  Mr. Taveres was assigned first to both 957 Woodycrest Ave. and 950 Woodycrest Ave., but after about six months he was assigned to 950 Woodycrest Ave. only.

   b.  Mr. Rosa was assigned to 1135 Boynton Ave.

   c.  Mr. Catedral was assigned simultaneously to 950 Woodycrest Ave. and 957 Woodycrest Ave.

34.  However, in addition to those above-described assignments, plaintiffs were sent to perform services for several hours each week at other buildings owned and operated by defendants, or at defendants' business offices.

35.  Plaintiffs Taveras and Rosa performed the normal duties of building superintendents, such as collecting rent, maintaining the buildings, checking the boiler, performing repairs for tenants including plumbing,

painting, and plastering, renovating vacant apartments, and shoveling snow in winter.

36.  Mr. Catedral performed the normal duties of porters, including but not limited to assisting the building superintendents, sweeping and mopping, taking out the garbage, shoveling snow in winter, handling and separating the recycling, and renovating vacant apartments.

37.  Plaintiffs' work was performed in the normal course of defendants' business and was integrated into the business of defendants, and did not involve executive or administrative responsibilities.

38.  At all relevant times herein, plaintiffs were employees engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

39.  Plaintiffs were "on call" to provide assistance to tenants 24/7, but they generally worked schedules as follows:

    a.  Mr. Taveras generally worked six days per week, every day except Sunday. For roughly the first six months of his employment, when he was responsible for two buildings, he routinely worked twelve hours per day, for a total of approximately 72 hours per week. After that, he

generally worked ten hours per day, for a total of about 60 hours per week.

b. Mr. Rosa generally worked seven days per week, working roughly nine-hour days Monday through Saturday and an additional five hours on Sunday, for a total of approximately 59 hours per week.

c. Mr. Catedral routinely worked seven days per week, 12 hours per day, for a total of about 84 hours per week.

40. As a result, plaintiffs routinely worked in excess of forty hours each week of their respective employments with the D&J defendants.

41. Until roughly 2014, the D&J defendants did not provide a time clock, computer punch, timesheets, or any other method for employees to track their time worked.

42. Commencing in 2014, the D&J defendants began requiring plaintiffs to fill out timesheets.

43. Upon information and belief, this policy was implemented as the result of another wage-and-hour lawsuit that had been filed against the D&J defendants at the time.

44. However, plaintiffs were instructed by defendant Sedge to record no more than 40 hours on their respective timesheets, regardless of the number of hours they actually worked.

45.   On at least one occasion each, each of the three plaintiffs prepared a timesheet listing in excess of 40 hours; in each such instance, defendant Sedgh tore up the paper and required that plaintiff to resubmit it with fewer hours listed.

46.   Plaintiffs were paid weekly on a salary basis throughout their employment, at the following rates:

    a.   Mr. Taveras was paid $450 per week when his employment began, but he got several raises over the years until he was receiving $700 per week by the time his employment ended.

    b.   Mr. Rosa was paid $600 per week throughout his employment.

    c.   Mr. Catedral was paid $250 per week when his employment began; after approximately a year he received a raise to $300 per week.  In roughly 2014, he was given a second raise to $400 per week, but was given no further raises thereafter.

47.   Mr. Catedral's effective rate of pay was also below the statutory federal and New York minimum wage in effect at relevant times.

48.   Defendants' failure to pay Mr. Catedral an amount at least equal to the federal or New York minimum wage in

effect during relevant time periods was willful, and lacked a good faith basis.

49.  In addition, defendants failed to pay plaintiffs any overtime "bonus" for hours worked beyond 40 hours in a workweek, in violation of the FLSA; this omission also violated Mr. Catedral's rights under the New York Labor Law, and the supporting New York State Department of Labor regulations.

50.  Defendants' failure to pay plaintiffs the overtime bonus for overtime hours worked was willful, and lacked a good faith basis.

51.  Plaintiffs were generally paid by check. However, for the first two years of Mr. Catedral's employment, he was paid solely in cash.  Also, on occasion defendants would pay Mr. Rosa his salary partly by check and partly in cash, with no explanation.

52.  When plaintiffs were paid by check, they received paystubs; however, those stubs did not reflect any cash payments made by defendants.

53.  Before 2014, these paychecks were typically issued by D&J Real Estate Management II LLC, while after that time, one or more of the other defendant entities would typically issue the checks. However, regardless of which entity was issuing paychecks to plaintiffs, paperwork

regarding plaintiffs' work assignments typically had D&J Real Estate Management II LLC's name on it, and nothing about plaintiffs' employment changed regardless of which entity was issuing their checks.

54. Defendants failed to provide plaintiffs with written notices providing the information required by the Wage Theft Prevention Act – including, *inter alia*, defendants' contact information, plaintiffs' regular and overtime rates, and intended allowances claimed – and failed to obtain plaintiffs' signatures acknowledging the same, upon each plaintiff's hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time.

55. Defendants failed to provide Mr. Rosa or Mr. Catedral with accurate, compliant weekly records of their compensation and hours worked, in violation of the Wage Theft Prevention Act.

56. Mr. Rosa was not paid his paycheck for his final week of employment.

57. In or about April 2017, defendants promised Mr. Taveras a $1,000 bonus if he remedied a list of violations issued by the Department of Housing Preservation and Development.

58.   Although   Mr.   Taveras   completed   the   required repairs, defendants never paid him the $1,000 bonus.

59.   Throughout  the  period  of  plaintiffs'  employment, both  before  that  time  (throughout  the  Collective  Action Period)   and   continuing   until   today,   defendants   have likewise  employed  other  individuals  like  plaintiffs  (the Collective  Action  Members)  as  building  superintendents  and porters,  in  positions  that  required  little  skill,  no capital  investment,  and  with  duties  and  responsibilities that did not include any managerial responsibilities or the exercise of independent judgment.

60.  Defendants  applied  the  same  employment  policies, practices,  and  procedures  to  the  Collective  Action  Members, including  policies,  practices,  and  procedures  with  respect to the payment of minimum wages and overtime.

61.  Defendants  have  likewise  failed  to  pay  these other  individuals  who  were  building  porters  at  a  rate  at least  equal  to  the  minimum  wage,  in  violation  of  the  FLSA and the New York Labor Law.

62.  These  other  individuals  have  worked  in  excess  of forty  hours  per  week,  yet  defendants  have  likewise  failed to  pay  them  overtime  compensation  of  one-and-one-half  times their  regular  hourly  rate  in  violation  of  the  FLSA  and  (for porters) the New York Labor Law.

14

63. Upon information and belief, these other individuals were not provided with required wage notices, and were not always provided with accurate, compliant weekly wage statements as specified in New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act.

64. Upon information and belief, while defendants employed plaintiffs and the Collective Action members, and through all relevant time periods, defendants failed to maintain accurate and sufficient time records or provide accurate records to employees, and failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law.

## COUNT I

### (Fair Labor Standards Act – Minimum Wage)

65. Plaintiff Victor Catedral, on behalf of himself and all Collective Action Members, repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

66. At all relevant times, defendants employed Mr. Catedral and the Collective Action Members within the meaning of the FLSA.

67. Defendants failed to pay a salary greater than the minimum wage to Mr. Catedral and the Collective Action Members for all hours worked.

68. As a result of defendants' willful failure to compensate Mr. Catedral and the Collective Action Members at a rate at least equal to the federal minimum wage for each hour worked, defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 206.

69. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260.

70. Due to defendants' FLSA violations, Mr. Catedral and the Collective Action Members are entitled to recover from defendants their unpaid compensation plus liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**(New York Labor Law – Minimum Wage)**

71. Mr. Catedral repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

72. At all relevant times, Mr. Catedral was employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

73. Defendants willfully violated the rights of Mr. Catedral by failing to pay him compensation in excess of the statutory minimum wage in violation of the New York Labor Law §§ 190-199, 652 and their regulations.

74. Defendants' failure to pay compensation in excess of the statutory minimum wage was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

75. Due to defendants' New York Labor Law violations, Mr. Catedral is entitled to recover from defendants his unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT III

### (Fair Labor Standards Act - Overtime)

76. Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

77. At all relevant times, defendants employed plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

78. At all relevant times, defendants had a policy and practice of refusing to pay overtime compensation to their employees for hours they worked in excess of forty hours per workweek.

79. As a result of defendants' willful failure to compensate their employees, including plaintiffs and the Collective Action Members, at a rate at least one-and-one-half times their lawful regular rates of pay for work performed in excess of forty hours per workweek, defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

80. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacks a good faith basis within the meaning of 29 U.S.C. § 260.

81. Due to defendants' FLSA violations, plaintiffs and the Collective Action Members are entitled to recover from defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT IV

### (New York Labor Law - Overtime)

82.  Plaintiff Victor Catedral repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

83.  At all relevant times, Mr. Catedral was employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

84.  Defendants willfully violated Mr. Catedral's rights throughout his employment by failing to pay him overtime compensation at rates at least one-and-one-half times his lawful regular rate of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations in 12 N.Y.C.R.R § 141.

85.  Defendants' failure to pay overtime was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

86.  Due to defendants' New York Labor Law violations, Mr. Catedral is entitled to recover from defendants his unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT V

### (New York Labor Law — Wage Theft Prevention Act)

87. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

88. At all relevant times, plaintiffs were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

89. Defendants willfully violated plaintiffs' rights by failing to provide them with the wage notices required by the Wage Theft Prevention Act when they were hired, or at any time thereafter.

90. Defendants willfully violated the rights of Mr. Rosa and Mr. Catedral by failing to provide them with compliant wage statements/paystubs required by the Wage Theft Prevention Act at times during their employment.

91. Due to defendants' New York Labor Law violations relating to the failure to provide compliant paystubs, Mr. Rosa and Mr. Catedral are entitled to recover from the defendants statutory damages of $100 per week through February 26, 2015, and $250 per day from February 27, 2015 through the end of their employment, up to the maximum statutory damages.

92.   Due to defendants' New York Labor Law violations relating to the failure to provide wage notices, plaintiffs are entitled to recover from the defendants statutory damages of $50 per week through February 26, 2015, and $50 per day from February 27, 2015 to the termination of their employment, up to the maximum statutory damages.

## COUNT VI

### (New York Labor Law – Failure to pay wages)

93.   Mr. Taveras and Mr. Rosa repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

94.   At all relevant times, Mr. Taveras and Mr.Rosa were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

95.   Defendants willfully violated the rights of Mr. Taveras and Mr. Rosa by failing to pay them all compensation owed to them, in violation of New York Labor Law § 191.

96.   Defendants' failure to pay all comepnsation owed, was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

97.   Due to defendants' New York Labor Law violations, Mr. Taveras and Mr. Rosa are entitled to recover from

defendants their unpaid wages, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT VII

### (Breach of Contract – Defendants D&J and 3171 Rochambeau)

98. Mr. Taveras repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

99. Defendants D&J Real Estatement Management II LLC and 3171 Rochambeau Ave. LLC entered into an agreement with Mr. Taveras to pay him a bonus for completing a set of repairs.

100. Mr. Taveras completed those repairs.

101. Defendants D&J Real Estatement Management II LLC and 3171 Rochambeau Ave. LLC failed to pay Mr. Taveras the promised bonus.

102. The failure of defendants D&J Real Estatement Management II LLC and 3171 Rochambeau Ave. to pay the promised bonus was a breach of contract.

103. As a result, Mr. Taveras has been damaged, and is entitled to recover from these defendants his unpaid compensation, interest, reasonable attorneys' fees, and costs and disbursements of the action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and appointing plaintiffs and their counsel to represent the Collective Action members;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

c. An injunction against defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

d.  Compensatory damages to Mr. Catedral for failure to pay the minimum wage pursuant to the FLSA;

e.  A compensatory award of unpaid compensation, at the statutory overtime rate, due under the FLSA and, for Mr. Catedral, under the New York Labor Law as well;

f.  Compensatory damages for failure to pay the minimum wage to Mr. Catedral pursuant to the New York Labor Law;

g.  An award of liquidated damages as a result of defendants' willful failure to pay the statutory minimum wage and overtime compensation pursuant to 29 U.S.C. § 216;

h.  Compensation for unpaid wages;

i.  Liquidated damages for defendants' New York Labor Law violations;

j.  Statutory damages for defendants' violation of the New York Wage Theft Prevention Act;

k.  Damages for defendants' breach of contract;

l.  Back pay;

m.  Punitive damages;

n.   An   award   of   prejudgment   and   postjudgment
     interest;

o.   An award of costs and expenses of this action
     together with reasonable attorneys' and expert
     fees; and

p.   Such other, further, and different relief as
     this Court deems just and proper.

Dated:   September 29, 2017

_____
David Stein (DS-2119)
SAMUEL & STEIN
38 West 32nd Street
Suite 1110
New York, New York 10001
(212) 563-9884

Attorneys for Plaintiffs

# EXHIBIT A

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of D&J Real Estate Management II, 3171 Rochambeau Ave LLC, et al., and their owners and affiliates to pay me, *inter alia*, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit. I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de D&J Real Estate Management II, 3171 Rochambeau Ave LLC y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos..

_____
Antonio  Taveras


Date:  June 19, 2017

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of D&J Real Estate Management II, Bronx Boynton Ave. LLC, et al., and their owners and affiliates to pay me, *inter alia*, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit. I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de D&J Real Estate Management II, Bronx Boynton Ave. LLC y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos..

Pascual Rosa

Date:  July 13, 2017

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of D&J Real Estate Management II, et al., and their owners and affiliates to pay me, *inter alia*, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit. I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de D&J Real Estate Management II, y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos..

Victor Catedral

Date:  September 15, 2017