UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANTONIO TAVERAS et al.,

                            Plaintiffs,

            -against-

D&J REAL ESTATE MANAGEMENT II, LLC et al.,

                            Defendants.

-----------------------------------------------------------------X

**OPINION AND ORDER**

**17-CV-7567 (LTS) (KHP)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/23/2018

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiffs Antonio Taveras, Pascual Rosa, and Victor Catedral bring this action against their former employers, Defendants D&J Real Estate Management II LLC ("D&J"), 3171 Rochambeau Ave. LLC ("3171 Rochambeau"), and Bronx Boynton Ave. LLC ("Boynton"), and Defendant David Sedgh, an owner of D&J, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"). Plaintiffs assert, among other things, that Defendants failed to pay them and other similarly situated employees the appropriate minimum wage and overtime compensation required by the FLSA. Presently before the Court is Plaintiffs' Motion for Conditional Certification of a Collective Action. For the reasons set forth below, Plaintiffs' motion is GRANTED in part and DENIED in part.

## BACKGROUND

      Plaintiffs worked as building superintendents and/or porters in buildings owned by Defendants from 2012 through 2017. Taveras worked for D&J as a superintendent at two adjacent buildings located at Woodycrest Avenue in the Bronx. Catedral worked as a porter at the same two adjacent buildings on Woodycrest Avenue. Rosa worked as a superintendent at a

1

building on Boynton Avenue in the Bronx. Plaintiffs each contend that D&J occasionally assigned them to work at other buildings owned by D&J but do not specify the locations of the other buildings or the dates when they were assigned to work at other buildings.

Plaintiffs each have submitted sworn declarations stating that they were paid a weekly salary instead of an hourly rate. Taveras and Rosa also attached sample pay stubs showing a weekly salary with no breakdown of hours or payment of overtime. Catedral states he was paid by cash initially, and later by check. Catedral does not provide samples of any checks but states that the checks he received did not reflect a breakdown of hours worked. Plaintiffs assert that they regularly worked more than forty hours each week but were not paid the appropriate minimum wage based on their hours worked or additional amounts for overtime as required by the FLSA. In their respective affidavits, each Plaintiff points to the days and average number of hours they worked per week – all well over forty hours each week. Each Plaintiff also states that, although at some point they were required to complete weekly timesheets, Defendant Sedgh prohibited them from entering more than thirty-eight or forty hours per week even if they actually worked more than forty hours in a particular week.

Plaintiffs also assert that they were jointly employed by Defendants and Defendants should therefore be treated as a single employer. In support of their assertion, Taveras and Rosa submitted documents suggesting they were employed by more than one entity. For example, in support of the instant motion, Taveras provided a copy of an employment handbook with a cover page titled Employment Handbook of 3171 Rochambeau Ave LLC. However, the welcome note in the handbook states that the handbook was for employees of D&J. Taveras also produced a letter from D&J written on November 7, 2013 and signed by

Sedgh confirming Taveras's employment by D&J, but the paychecks Taveras submitted to the Court suggest that he was paid by 3171 Rochambeau. Rosa provided a work order he received from D&J Management asking him to address various issues raised by a tenant at the Boynton location as well as a disciplinary notice on Boynton letterhead. Thus, Plaintiffs assert that all three Defendants seem to have issued employment-related documents to Taveras and Rosa—suggesting Defendants may be interrelated and a single integrated enterprise.

In support of their motion for conditional certification, each Plaintiff asserts in a declaration that he observed other unnamed superintendents and porters working overtime and believes, based on conversations with them, that they were not paid overtime. These allegations, however, are extremely conclusory. Apart from Taveras's conversations with Catedral, Taveras does not mention in his declaration the names or job titles of other employees with whom he spoke. Taveras does not state where or when these other unidentified persons worked, or the entity for which they worked. He does not describe details of the conversations with the other individuals or the basis on which he could have observed them regularly working overtime given his own busy schedule at the Woodycrest Avenue buildings. He does not describe the job duties or point to any other facts that would require the unnamed employees to work more than forty hours per week. The only statements he makes about other employees are that he found out "they were working far more than forty hours . . . but were paid salaries" and that they "told me they had tried to list real hours on timesheets" but Defendant Sedgh did not permit them to list more than forty hours per week on their timesheets. (Declaration of Antonio Taveras ¶ 17, Doc. No. 28-1.)

3

Similarly, apart from Rosa's conversations with Taveras and Catedral, Rosa does not identify by name or position the other employees he allegedly spoke to and observed. He does not identify the buildings where these other employees worked, the entities for which they worked, or when they worked. He states only that from speaking to other employees, he "learned [the other employees] were also paid as salaried employees" and that he "knows that they worked more than forty hours [per week]." (Declaration of Pascual Rosa ¶ 18, Doc. No. 28-2.) He does not explain details of any conversations with others. And, although he says he observed porters in his building working more than forty hours, he does not say how he would have had the opportunity to observe people in other buildings working more than forty hours a week.

Finally, Catedral states in his declaration that he talked with "many other employees" about wages and hours but, apart from Catedral's conversation with Taveras, Catedral does not provide names, job titles, dates, or any details of these conversations. Catedral states he saw Taveras (who worked in the same buildings as Catedral) and others working ten or more hours per day and six or seven days per week. But he does not say where the other employees worked, when he made the observations, or how he would have had the opportunity to observe others regularly working such schedules. He states only that unspecified persons told him they were paid salaries and did not recieve overtime.

In addition to Plaintiffs' sworn declarations, Taveras provided the handbook referenced above and points to a provision therein that expressly states that non-supervisory superintendents and porters are not entitled to overtime.

4

## DISCUSSION

### I. *Collective Action Legal Standard*

Section 216(b) of the FLSA provides that parties suing under Sections 206 and 207 may proceed "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A proceeding brought under Section 216 is traditionally referred to as a "collective action." *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012). Although the statute itself does not prescribe the process for collective action approval, "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Orders authorizing notice to potential collective action members are often referred to as orders conditionally "certifying" a collective action, even though the FLSA itself does not mandate certification. *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10. (2d Cir. 2010); *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010). Accordingly, the dissemination of notice in an FLSA collective action is a case management tool that courts may employ in "appropriate cases," including where notice will facilitate swift and economic justice. *See Myers*, 624 F.3d at 555.

The Second Circuit has endorsed a two-stage process for certification of a collective action under Section 216(b) of the FLSA. *Id.* at 554-55. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. Plaintiffs can meet this burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or

5

plan that violated the law." *Guillen*, 750 F. Supp. 2d at 475 (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). The modest factual showing can be made by "relying on [plaintiff's] own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99-cv-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). If the Court finds that the potential plaintiffs appear to be similarly situated to the named plaintiffs, it will issue notice and permit the case to proceed through discovery as a collective action. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).

Because certification at this early juncture is merely "preliminary" and subject to reevaluation on a fuller record, a plaintiff's burden is low. *Id.* at 368. At this initial stage, the "court need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice." *Damassia v. Duane Reade, Inc.*, No. 04-cv-8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). However, certification is not automatic. *See, e.g., Guillen*, 750 F. Supp. 2d at 476-80 (denying certification at the first stage); *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 349-57 (E.D.N.Y. 2015) (affirming the denial of conditional certification). Although a plaintiff's factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations. *See Myers*, 624 F.3d at 555; *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006).

At the second stage, the district court conducts a more stringent analysis, based on the record developed through discovery, to determine whether the collective action should proceed. *Myers*, 624 F.3d at 555. The action may be "de-certified" if the record reveals that the

plaintiffs who have opted in are not actually "similarly situated" to the named plaintiffs, and the opt-in plaintiffs' claims may be dismissed without prejudice. *Id*.

## II. Application of Legal Standard

Plaintiffs seek certification of a collective action consisting of all superintendents and porters employed by Defendants and related entities at all locations where such entities have buildings. Defendants deny liability and argue that conditional certification is not appropriate because New York's Minimum Wage Order for the Building Service Industry ("Minimum Wage Order") exempts residential building janitors and superintendents from overtime provisions of the FLSA and NYLL. They assert, therefore, that their policy is to comply with the law and that Plaintiffs cannot point to a common policy applicable to porters and superintendents that violates the FLSA.

While it is true that New York's Minimum Wage Order exempts certain residential janitors and superintendents from overtime under state law, it does not, as Defendants argue, address obligations under federal law, nor can it. 12 NYCRR § 141.1-4. The Supremacy Clause of the U.S. Constitution prevents New York's Minimum Wage Order from trumping federal law. *See* U.S. Const. art. VI, cl. 2. Under the FLSA, employees must be paid minimum wage and overtime unless they fall under a specific exemption. 29 U.S.C. §§ 206, 207, 213. Defendants have not pointed to any FLSA exemption applicable to Plaintiffs or others in the proposed collective, and Plaintiffs have submitted sworn declarations stating that they worked more than forty hours per week but were not paid overtime. An employer must comply with both state and federal wage laws, and where, as here, the FLSA provides greater protection than state law in terms of minimum wages and payment of overtime, an employer must pay the greater

amounts due under federal law. *See Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991); *Llolla v. Karen Gardens Apartment Corp.*, No. 12-cv-1356 (MKB) (JO), 2014 WL 1310311, at *10 (E.D.N.Y. Mar. 10, 2014), *adopted as modified by*, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014) (recognizing coexistence of state and federal wage laws and awarding overtime pay pursuant to FLSA rather than NYLL because the FLSA entitled plaintiff to a greater amount of damages). Thus, Defendants' argument on this point is without merit.

Next, Defendants' argument that there is an insufficient factual nexus linking Plaintiffs' claims to those of the putative collective and that all porters and superintendents are not sufficiently similarly situated to be treated as a collective fails with respect to the Woodycrest and Boynton Avenue locations. At this stage of the litigation, Plaintiffs need only proffer substantial allegations of a factual nexus between them and potential opt-in plaintiffs with regard to an FLSA violation. *See Hallissey*, 2008 WL 465112, at *2 (the key question at the conditional certification stage is "whether plaintiffs are similarly situated with respect to their allegations that the law has been violated"). Plaintiffs have done that with respect to the Woodycrest and Boynton Avenue locations by proffering sworn declarations indicating that they worked more than forty hours each week and were not paid overtime and stating that they observed others in their locations, with whom they had a chance to interact, similarly working overtime. Plaintiffs also have proffered an employee handbook apparently applicable to employees at the Woodycrest Avenue locations indicating that there was a common policy to not pay overtime to porters and superintendents.

Contrary to what Defendants argue, different job titles may be included within a conditional collective if there is evidence that plaintiffs may be similarly situated as to a

common policy to violate the FLSA. *See Guaman v. 5 M Corp.*, No. 13-cv-03820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013); *Ritz v. Mike Rory Corp.*, No. 12-cv-367 (JBW) (RML), 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013) (rejecting limitation of conditional class to bartenders and instead including all tipped service workers in conditional class); *see also Niemiec v. Ann Bendick Realty*, No. 04-cv-00897 (ENV) (KAM), 2007 WL 5157027, at *10 (E.D.N.Y. Apr. 23, 2007) (granting class certification motion under Fed. R. Civ. P. 23 for class of porters and superintendents; rejecting argument that superintendents' potential "exempt" status precluded finding of commonality at certification stage of litigation).[1] The *Romero v. H.B. Auto Group., Inc.* and *Colon v. Major Perry St. Corp.* cases cited by Defendants do not hold otherwise. *See Romero v. H.B. Auto. Group., Inc.*, No. 11-cv-386 (CM), 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012) (whether variance of job duties precludes collective treatment is more appropriately analyzed at the decertification stage of an FLSA collective action, not at the conditional certification stage); *Colon v. Major Perry St. Corp.*, No. 12-cv-3788 (JPO), 2013 WL 3328223, at *5, 7 (S.D.N.Y. July 2, 2013) (holding that at conditional certification stage, court should not "scrutinize possible factual variations between plaintiffs" and potential opt-in plaintiffs, and declining to include handymen in collective with superintendents because (1)

---

[1] The Court cites to *Niemiec* solely because its rationale is instructive at the *conditional* certification stage where the Court is merely assessing whether there is a minimal level of evidence sufficient to send notice to potentially similarly situated individuals and because it is an example of a case where the court permitted porters and superintendents to be included in the same class despite their different job titles. *See Niemiec*, 2007 WL 5157027, at *14. The Court does not endorse *Niemiec* insofar as it suggests exempt and non-exempt positions could be included in the same class. Variations among the named plaintiffs and opt-in plaintiffs may preclude representative or class-wide proof of a violation of the FLSA. *See McEarchen v. Urban Outfitters, Inc.*, No. 13-cv-3569 (RRM) (JO), 2017 WL 3912345, at *1 (E.D.N.Y. Sept. 6, 2017) (adopting report recommending decertification of collective action under FLSA due to variations between members of the collective and the individualized nature of exempt status determination); *Myers*, 624 F.3d at 547-52 (district court did not abuse discretion in declining to certify class because exemption analysis under FLSA required individualized inquiry and could not be established by common proof applicable to all of the putative class members).

plaintiff conceded the two jobs involved markedly different pay scales, hours, and tasks, overtime policies, and compensation schemes that appeared to be "qualitative in nature, reaching the essentials of the job rather than variations bearing on damages," and (2) Plaintiff offered no evidence concerning handymen). As noted above, the handbook provided by Taveras suggests that porters and superintendents were subject to a common pay practice that might have violated federal law.

However, Plaintiffs' allegations are too conclusory to demonstrate that porters and superintendents at locations other than where Plaintiffs worked are or may be similarly situated. Plaintiffs do not identify the names or job titles of any person who worked at other locations; they provide no evidence that the handbook applies to employees in other locations; they do not state the specifics of any conversations with other employees; and they do not explain how they had the opportunity to observe the regular work schedules of employees at other locations. Plaintiffs likewise offer no proof that Defendant Sedgh was a manager of employees at other locations.

Courts in this Circuit often restrict the scope of a proposed collective or deny conditional certification because of a failure to identify other co-workers by name and title, provide the specifics of conversations with those employees, or note details of other employees' working conditions and hours. *See Sanchez v. JMP Ventures, L.L.C.*, No. 13-cv-7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification because plaintiff failed to provide any detail as to his observations of and conversations with other proposed members of the putative collective, including the location or date of the conversations/observations, and describing plaintiff's declaration as "generalized, "similar[] to the complaint," and containing

"precisely the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient"); *Ikikhueme v. CulinArt, Inc.*, No. 13-cv-293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (denying conditional certification where plaintiff offered only his single declaration with "unsupported assertions" and no specific information about other employees); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07-cv-7350 (BSJ), 2009 WL 7311383, at *5 (S.D.N.Y. Nov. 13, 2009) (denying conditional and class certification in "off-the-clock" case where plaintiff "attempt[ed] to impute her own limited experience to a nationwide class" and plaintiff's evidence failed to justify the size and scope of proposed class); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (granting conditional certification only as to location where plaintiffs worked because allegations about conditions at other locations were based on hearsay and unreliable statements); *Levinson v. Primedia Inc.*, No. 02-cv-2222 (CBM), 2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003) (conditional certification denied because plaintiffs' evidence was limited to their own circumstances and there was insufficient evidence demonstrating that defendant was "employer" of other putative collective members). The Court acknowledges that some other courts have granted conditional certification where a plaintiff's declarations were as bare as the ones provided by the instant Plaintiffs. However, this Court finds that more is required and that the proof provided by Plaintiffs at this point is insufficient to meet even the low burden of demonstrating commonality with individuals employed at other locations.

Finally, Plaintiffs argue that they were jointly employed by Defendants and that the Court should conditionally certify a collective that includes porters and superintendents employed by the three named Defendants as well as other unnamed related entities. When

evaluating whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes, courts consider the interrelation of operations, including whether there is centralized control of labor relations, common management, and common ownership or financial control. *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014). However, "whether or not [d]efendants operated as a single enterprise is a complicated and fact-specific inquiry that is not properly determined at the class certification stage." *Tiro v. Pub. House Investments, LLC*, 288 F.R.D. 272, 279 (S.D.N.Y. 2012).

For now, Plaintiffs have proffered sufficient facts to support their allegation that the three named Defendants may have operated as a single integrated enterprise at least with respect to the employees at the Woodyside and Boynton Avenue locations. These facts include: that Plaintiffs were occasionally assigned to work at other buildings owned by Defendants, demonstrating potential interrelation of operations; that Defendant Sedgh was involved in management of employees employed at the Woodyside and Boynton Avenue locations, suggesting common management and centralized control of labor relations; that Plaintiffs were paid by more than one of the Defendants, suggesting interrelation of operations and common management; and that Sedgh had an ownership interest in all three Defendant entities, suggesting common ownership. At a later stage in this litigation, after further discovery, the Court will determine whether Plaintiffs have in fact proven that the Defendants are a single integrated enterprise.[2] At this point, however, Plaintiffs have failed to provide any facts

---

[2] The Court understands Plaintiffs to be arguing that Defendants should be treated as a single integrated enterprise that jointly employed Plaintiffs for FLSA purposes. The Court notes that there is another, slightly different, test for determining whether separate entities should be considered a joint employer for FLSA purposes. *See Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013) (discussing definition of "employer" under FLSA); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003) (articulating factors for determining joint employer status).

indicating that there are other entities part of a single integrated enterprise whose unnamed and unidentified employees should be swept into Plaintiffs' proposed collective action. Thus, the scope of the proposed collective is overbroad insofar as it seeks to include employees of unnamed "related" entities.

### III. Notice And Consent Form

#### a. Notice

Plaintiffs have provided a proposed class notice that will need to be modified after a meet-and-confer in light of this Court's ruling on their Motion for Conditional Certification. The Court notes, however, that, contrary to what Defendants have argued, the proposed notice already contained Defendants' contact information and advised potential plaintiffs that they will be required to participate in discovery. Additionally, the Court notes that Defendants' argument regarding waiver of liquidated damages under state law is irrelevant to what should be included in the notice in this case because Plaintiffs do not currently seek to certify a class or recover liquidated damages under state law. Finally, the language in any notice must be neutral and non-threatening, neither suggesting that Plaintiffs' claims have merit nor discouraging potential opt-in plaintiffs from opting into this action.

#### b. Time Period Of Conditional Collective Action Certification

The statute of limitations applicable to a claim for unpaid wages and/or overtime compensation under the FLSA is two years from the date that the claim accrued or three years for a cause of action arising out of a willful violation. 29 U.S.C. § 255(a); *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 141 (2d Cir. 1999). At the conditional certification stage, allegations of willful FLSA violations are sufficient to apply the three-year statute of limitations for purposes

of sending a notice to putative members of the collective. *Francis v. A & E Stores, Inc.*, No. 06-cv-1638 (CLB) (GAY), 2008 WL 2588851, at *3 (S.D.N.Y. June 26, 2008), *adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008). Here, Plaintiffs have alleged willful conduct by Defendants. (Compl. ¶ 25.) Thus, the Court finds a three-year limitations period appropriate for sending notice to the putative collective action members. *See Garcia v. Chipotle Mexican Grill*, No. 16-cv-601 (ER), 2016 WL 6561302, at *9 (S.D.N.Y. Nov. 4, 2016) (finding a three-year notice period appropriate at this stage "[g]iven the fact that willfulness is disputed").

In sum, the Court conditionally certifies a class of potential plaintiffs who were employed as porters or superintendents by the named Defendants within three years of the filing of the Complaint in this matter.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Conditional Certification (Doc. No. 27) is GRANTED in part and DENIED in part. The parties are directed to discuss the scope and content of the class notice in light of this Court's ruling and provide the Court with a letter attaching the proposed notice and any remaining disputes by no later than April 2, 2018. The Clerk is respectfully requested to terminate the motion pending at Doc. No. 27.

SO ORDERED.

Dated: March 23, 2018
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge