# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| | | |
|---|---|---|
| **DAVID STEIN**<br>dstein@samuelandstein.com | May 9, 2019 | ADMITTED IN<br>NY, NJ, PA, IL, DC |

**VIA ELECTRONIC FILING**

Hon. Katharine H. Parker, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 750
New York, NY 10007

      Re:    **Taveras, et al. v. D&J Real Estatement Management II LLC, et al.**
              *Docket No. 17-CV-7567 (LTS) (KHP)*

Dear Magistrate Judge Parker:

     We represent plaintiffs Antonio Taveras, Pascual Rosa, and Victor Catedral in the above-captioned matter and submit this letter to the Court with the consent of Ruth Kraft, Esq.., counsel for defendants, in accordance with the Court's Order of April 11, 2019, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

Background

     Plaintiffs filed their complaint in this matter on October 4, 2017. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid minimum wage and overtime pay, as well as claims solely under the New York Labor Law for failure to provide wage notices and failure to provide wage statements, and for failure to pay wages.

     Specifically, plaintiffs alleged that they were employed by defendants as building services employees — Mr. Taveras and Mr. Rosa as superintendents, and Mr. Catedral as a porter — from 2012 through 2017. They each pleaded that they worked significantly in excess of 40 hours per week (indeed, at least 60 hours per week) but were paid salaries with no overtime components. Mr. Taveras was paid at salaries ranging from $550 per week to $700 per week, Mr. Rosa was paid $600 per week, and Mr. Catedral was paid salaries ranging from $250 per week to $400 per week. Plaintiffs were not provided with wage notices or compliant paystubs. And Mr. Rosa and Mr. Taveras had minor claims for failure to pay all wages owed. Defendants had only partial time records, all of which each plaintiff contended were inaccurate because defendants would not let

them list all the hours they worked. Plaintiffs also received apartments in which to live; plaintiffs contended that these were not legal apartments, however, and therefore could not be credited as compensation.

Based on these factual allegations, Mr. Catedral's pay fell below the minimum wage that was in effect at all times, and defendants failed to pay any plaintiff the overtime premiums to which he was entitled. Assuming that plaintiffs prevailed at trial, they estimated their maximum damages as follows:

For Mr. Taveras, $32,000 in actual and liquidated overtime damages, $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or compliant paystubs, and $1,000 for failing to pay all wages owed — a total of $43,000. For Mr. Rosa, $29,000 in actual and liquidated overtime damages, $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or compliant paystubs, and $600 for failing to pay all wages owed — a total of $39,600. For Mr. Catedral, $76,000 in actual and liquidated minimum wage damages, $44,000 in actual and liquidated overtime damages, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or compliant paystubs — a total of $130,000.[1] Combined, therefore, the plaintiffs were owed roughly $212,000, plus attorneys' fees.

Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' wage and hour claims against defendants for a total of $225,000. (Each plaintiff will receive a share of this figure pro-rated based on the above estimated damage calculations, as specified in the Agreement.) While the final amount that plaintiffs will actually receive — $148,482.01 net of attorneys' fees — is less than plaintiffs' maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of his claims and the risks attendant with continuing the litigation.

The primary factual dispute in this case was about plaintiffs' work schedules. (Dates of employment and compensation were not in serious question.) As noted above, defendants required plaintiffs to fill out time sheets, but plaintiffs contended that defendants required them to enter incorrect information on those sheets. As a result, defendants contended that plaintiffs each worked around 38 or 39 hours per week, rather than the 60 (or more) that plaintiffs themselves claimed.

Plaintiffs did not have any independent records of their own regarding the hours they had worked, and so their calculations were based solely on their own recollections about their

---

[1] Mr. Catedral's original allegations could have had him owed significantly more. However, we determined based on our discussions with the three plaintiffs and review of the evidence in the case (including deposition testimony) that his original allegations — working 84 hours per week — would be *extremely* difficult to establish. The figure quoted in the body of the letter assumes that he, like the other two plaintiffs, worked roughly 60 hours per week.

respective work histories. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of valid time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. And also to be sure, each of the three plaintiffs provided similar testimony regarding defendants' practices. But that meant the case would have been a pure credibility question for a fact-finder, which meant that it would not be resolvable short of trial.

By settling at this juncture, plaintiffs were able to get a very substantial portion of what they were potentially owed without the delay of waiting for trial or the risks attendant with trial. Moreover, defendants are making the payment in a lump sum, rather than forcing plaintiffs to deal with an installment plan. Thus, plaintiffs decided to accept defendants' offer.

<u>FLSA Settlement Approval</u>

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiffs suggest that they weigh in favor of settlement approval. The net settlement amount is 66% of plaintiffs' total claimed damages, and they will be receiving complete recovery of their claimed actual FLSA damages, plus additional amounts for their other claims. They will receive these funds without running any risk or having to prove their claims.

Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29, 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL

8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016)(net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiffs are experienced wage-and-hour litigators, and in consultation with plaintiffs they thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks. As evidence of the hard bargaining by plaintiffs, the final settlement amount represents a figure three times the size of the offer of judgment served on plaintiffs by defendants right after the settlement conference conducted by the Court.

Finally, other factors present do not weigh against a settlement. Plaintiffs no longer work for defendants, so there is no risk they will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case, despite being given an opportunity to join the collective action. Additionally, this case presents no novel questions of law that would benefit from extensive litigation; the issues in this case are factual.

Pursuant to counsel's retainer agreement with plaintiffs, we will be reimbursed for out-of-pocket expenses of $ $2,276.99 (filing fee, service of process, interpreters fees, deposition costs, and subway, LIRR and cab fare)[2] and will retain 1/3 of the net settlement (i.e., an additional $74,241.00) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g.,

---

[2] The Court can take judicial notice of the filing fee; receipts for service of process, train and cab fare, interpreters' fees, and deposition costs are attached as Exhibit C.

*Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an attorneys' fee amount of approximately 1.81 times our lodestar, a multiplier well within the range of those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure reflects the reasonableness of the percentage recovery; it was calculated as follows:

| Attorney | Class | Rate[3] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 48.60 | $17,367.50 |
| David Nieporent | Senior Associate | $325 | 76.00 | $23,725.00 |
| **TOTAL** | | | **124.60** | **$41,092.50** |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to

---

[3] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125, and travel was, as per firm policy, billed at half the attorney's usual rate.

practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation"). And, indeed, we have been awarded fees of precisely the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Bricetti in *Lu v.. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018), and Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018), and Judge Oetken in *Zhu v. Salaam Bombay, Inc., at al.*, 16-CV-4091 (JPO), 2019 WL 76706 (January 2, 2019). And in the Eastern District, where the rates are a bit lower, we were, last year, awarded fees of $375 and $325 in a wage and hour case, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018).

Moreover, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Very truly yours,

David Stein

Enc.

cc: Ruth Kraft, Esq.. (via ECF)